UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 07-22-01S |
| | ) | |
| DANIEL MCGLONE | ) | |

DEFENDANT'S RESPONSE TO PRESENTENCE REPORT

The defendant responds to the presentence report as follows.

Set forth below is the defense response to the Presentence Report. When the response is keyed to a particular paragraph or paragraphs of the report, the same is indicated.

## I. RESPONSES TO PARTICULAR PARAGRAPHS OF THE PRESENTENCE REPORT

Paragraph 9 - This paragraph discusses a restitution claim by Blue Cross Blue Shield of Rhode Island. There are several points related to this paragraph. First, the figure of $19,255.00 does accurately represent the figure set forth in the allegations in Counts 28 and 29 of the Indictment to which Mr. McGlone pled guilty. Second, Mr. McGlone did not receive any of the $19,255 in question. That money was received by the claimants, members of the Cesana family. The claimants, the Cesana Family, namely, Dennis Sr., Dennis Jr., and Barbara, routinely submitted monthly insurance claims directly to Blue Cross/Blue Shield of Rhode Island for reimbursement. The medication receipts were prepared and forwarded to the Cesanas directly by Signature Pharmacy. The money was received by the claimants, the Cesana Family, to reimburse them for money paid to

Signature Pharmacy. In fact, the defense understanding is that the Cesana family had submitted claims to Blue Cross/Blue Shield for reimbursement for hormone replacement therapy prior to their involvement with the defendant.

Based on the above, Mr. McGlone should not be liable for restitution of money he never received. The defense submits that there is no authority upon which to require a person to make restitution for money the person did not receive.

Without in any way waiving the contention of Mr. McGlone that he should not be liable for restitution of money he did not receive, he would note as part of the disposition of this case, he is being required to forfeit a large sum of money. While continuing to maintain his position that he should not be liable for restitution of money he did not receive, Mr. McGlone would argue that if the Court were to find him responsible for this sum of $19,255.00, that money should come from the funds already being forfeited.

Finally, the defendant would note, while still maintaining he should not be liable for this restitution figure, if this Court determines that he is liable, the defendant asks the Court to apportion liability among defendants. This Court has the specific statutory authority to order such an apportionment. 18 U.S.C. §3664(h). The co-defendant in this case has pleaded to the same counts, 28 and 29. In addition, the defense submits that in this case the obligation should also extend to Signature Pharmacy, and the Cesana family members, even though they are not co-defendants in this case.

Paragraphs 43-45 - These paragraphs address the fact that the defendant has zero criminal history points. The defense appreciates that U.S.S.G. 4A1.3(b)(2)(A) prohibits a downward departure below the applicable guideline range for Criminal History Category

I. In a sentencing motion and memorandum, the defense intends to argue that notwithstanding this provision of the guidelines, the Court should consider the defendant's zero criminal history points in imposing a sentence consistent with the mandate of 18 U.S.C. §3553 that is below the guideline range. The argument will be based in part on the fact that the defendant is not just in Criminal History Category I, but on the nature of his lack of prior criminal conduct, including the fact that he has zero criminal history points.

Paragraph 51 - This paragraph focuses on the relationship between Mr. McGlone and his 18 year old daughter. The defense simply wishes to provide additional information, particularly as it relates to the financial responsibility Mr. McGlone has undertaken with respect to his daughter. Not only did he consistently provide support above the Court ordered mandate, but he is currently paying for his daughter's college education at Georgian Court University in Lakewood, New Jersey. Room, board and tuition are approximately $15,200 per year. This figure does not include miscellaneous expenses, including books. Books alone can reach a figure of about $1,000 per year. Mr. McGlone is paying all the costs of his daughter's education. His daughter's mother is not paying any of these costs. His daughter is presently in the first year of a five year combined B.A. and M.B.A. program. Mr. McGlone hopes to be able to pay all the money due for his daughter's education. The costs of her college education will increase as the university increases its fees.

Paragraph 54 - This paragraph details the defendant's physical condition, including a specification of the medications he is currently taking. The defense is concerned about the continuation of the defendant's medication while incarcerated. The defendant notes that he has a long history of being under his current medical regimen and is concerned that an interruption of that regimen will harm him.

Paragraphs 60 through 63 – These paragraphs recount the many financial obligations of Mr. McGlone, including the fact that he has agreed to forfeit $946,345 in this case. The defense disputes that the defendant has the ability to pay a fine or that he ought to pay a fine. First, the defense notes that in the plea agreement the government specifically agreed not to recommend a fine. Second, the defense disputes that Mr. McGlone has the ability to pay a fine. The defendant specifically notes that forfeiture of $946,345 is expected to consume virtually all of his resources. The defense assumes that the $100,000 posted for bond will be used to partially satisfy the forfeiture. The defendant also still has an obligation in back taxes to the State of New Jersey in excess of one million dollars, as set forth in paragraph 61 of the Presentence Report. For all of these reasons, the defense asks that no fine be imposed, including any fine to pay for the costs of imprisonment or supervised release. (See paragraph 76 of the Presentence Report)

The defendant does note that pursuant to the plea agreement, the defendant is to forfeit certain assets. The plea agreement specifically provides that with respect to two matters, set forth in footnotes 1 and 2 of the plea agreement, if the parties are not able to agree as to certain figures, the final determination of such matters shall be left to the Court. The defense simply notes that as of the date of the filing of this response there has

not been agreement on the matters identified in those footnotes, but this does not mean there will not be agreement; simply that no agreement has been yet reached.

Paragraph 80 - The defense interprets this paragraph to refer only to the claim for restitution set forth in paragraph 9 of the Presentence Report, detailing the $19,255 restitution obligation to Blue Cross Blue Shield of Rhode Island and not to the amounts to be forfeited. The defense has previously set forth in this response the argument that the funds being forfeited should be used to make the restitution payment of $19,255, if a restitution payment is ordered. If that argument is rejected, the defense would ask the Court to waive any interest requirement on the restitution figure. Given the defendant's other obligations, including the forfeitures, he simply does not have the resources to pay interest on any restitution figure.

Paragraph 82 and 83 - These paragraphs refer to factors that may warrant a departure. First, the defense notes that paragraph 83 indicates that the government advised it would recommend a downward departure under §5K1.1 if the defendant provided substantial assistance.

The defense anticipates filing a sentencing motion and memorandum seeking a sentence that is lower than that set forth in the Guideline Range based on the factors set forth in 18 U.S.C. §3553.

The defense will also argue that a downward departure is warranted pursuant to U.S.S.G. 5K2.0 on the ground that the Guidelines do not adequately take into account the

changing landscape concerning steroid prosecutions. Put quite simply, this is an area of the law where there has been rapid and ongoing change and the defense submits that the Guidelines simply are not able to reflect the full import of that change. The defense also argues that the guideline range in this case would result in a sentence that is outside of the heartland of cases. The United States Sentencing Commission Steroids Working Group published a 2006 Steroids Report. That report chronicles some of the history of the increasing focus on steroid prosecutions in this county. The final two pages of the report (pages 28-29) present an analysis of Commission data for steroid offenders for the years 2001 through 2005.[1] The report speaks for itself, but certain facts stand out. For the 5 years involved there were 46 offenders sentenced. Over half of these offenders (26) received a probation only sentence. In fourteen of the cases, there was a prison sentence, with the average sentence being 14.5 months and the median being 6 months. These figures appear to include downward departures provided for substantial assistance to authorities.

In addition, in this case the application of one guideline, U.S.S.G. §2D1.1(b)(6) warrants particular consideration. The defendant and the Government agreed that this 2 point enhancement applies and the defendant continues to agree that it applies. The enhancement is for the distribution of an anabolic steroid with a masking agent. This particular guideline became effective March 27, 2006. See Amendment 681 to the Sentencing Guidelines. Given that the defendant's conduct straddles the date of this amendment, there is no dispute about the applicability of the Amendment. See United States v. Regan, 989 F.2d 44 (lst Cir. 1993). Notwithstanding the applicability of the

[1] The report is available at the United States Sentencing Commission web site. The defense has attached hereto the cover sheet of the report and the two pages cited.

guideline, the fact that Guideline only became effective relatively late into the period of the defendant's conduct is a factor warranting consideration in terms of a downward departure. In addition, the reasons for the Amendment are set forth. One of the reasons as set forth in the history was to, "…address congressional concern with the distribution of anabolic steroids to athletes, particularly the impact that steroids distribution has on the integrity of sport….". While the defense does not dispute the applicability of the guideline in that there was the distribution of anabolic steroid and a masking agent, at least one of the purposes of this enhancement does not appear to be significantly reflected in the facts of this case. There does not appear to be any particular evidence of any impact on sport in this case.

DANIEL MCGLONE
By his Attorney,

/s/Robert B. Mann____________
Robert B. Mann #153
Mann & Mitchell
610 Turks Head Place
Providence, RI 02903
(401) 351-5770

**CERTIFICATION**

I hereby certify that on this 15th day of October, 2007, I did send a true copy of the within document by electronic means (ECF) to:

Adi Goldstein, AUSA

/s/Robert B. Mann
Robert B. Mann #0153
Mann & Mitchell
610 Turks Head Place
Providence, RI 02903
(401) 351-5770
rmann@conversent.net